Evans v. Mohr.

LYNDEN EVANS

v.

SIMON MOHR ET AL.

*Attorney and Client—Services Rendered—Recovery for—Contract.*

1. An attorney's right to recover compensation for services alleged to have been rendered a given party, must rest upon some contract, express or implied. or created. by law, which would render such party liable to him.

2. Knowledge that an attorney was engaged in the business of a given party, will not raise an implied contract on the part of such person to pay therefor. he having entered into a written contract with the business partner of such attorney to attend to such business, the understanding being that he was to pay for services rendered by third parties.

[Opinion filed December 7, 1891.]

APPEAL from the Circuit Court of La Salle County; the Hon. DORRANCE DIBELL, Judge, presiding.

Messrs. FREDERICK ARND, for appellant, and LYNDEN EVANS, *pro se.*

Messrs. DUNCAN & GILBERT and D. B. SNOW, for appellees.

CARTWRIGHT, J.   This was a suit by appellant, commenced by attachment against appellees, who reside in Germany, to recover the value of services alleged to have been rendered for appellees by appellant as their attorney.   The case was tried by the court without a jury and there was judgment for appellees for costs.   The facts, as developed on the trial, are substantially as follows:   In February, 1887, Elizabeth B. F. Reddick died intestate, leaving an estate of $30,000 or more, and leaving as her heirs her brother, John Funk, and the appellees, descendants of a deceased half-sister.   On the petition of John Funk, who swore that he was the only heir of the decedent, George W. Armstrong was appointed administrator of her estate by the Probate Court of La Salle County, and the administration proceeded until Funk obtained, through orders of the Probate Court, all the personal estate.   Funk knew of the German heirs, and having obtained the estate through the administration, sent an agent named Wesseling to Germany and obtained through his agency a release or transfer of their interest in the estate for $1,500 by means of fraud. The purchase, and the existence of these heirs, who were entitled to one-half of the estate, was not made known to the Probate Court, which still had jurisdiction of the administration.

Daniel Evans was judge of the Probate Court and had been sued by Funk.   During the pendency of that suit, Judge Evans discovered from the records of his court that there were other heirs in Germany of the Reddick estate.   With this information he went to Chicago and called on his son, the appellant, who was a practicing lawyer and a member of the firm of Barnum, Evans & Barnum.   The senior member of the firm, William H. Barnum, was then in Europe, and appellant cabled him to wait for a letter, wherein he gave Barnum the information and asked him to investigate.   This was done, as appellant testified, primarily for the purpose of ascertaining whether Funk was a perjurer, and, at the same time, if Barnum was willing, he could do something for the defrauded

heirs. Barnum visited appellees and obtained from them a power of attorney to collect and receive their share of the estate, with full power " to bring, prosecute, conclude, and in his discretion, to manage and control whatever suits, appeals or appellate proceedings in law or equity, in Illinois or elsewhere," might, in his judgment, be found necessary. At the same time, and as a part of the same transaction, a further instrument was executed between the same parties referring in terms to the power of attorney, and providing that when Barnum should realize the full amount of money or property that he should be able to recover under the power of attorney, then, after retaining the amount of all cash outlays made by him, he should keep and retain as his own, in full payment of and for his services as attorney in fact, and for all legal services he might have rendered or procured to be rendered, one-half of the remaining money or property, and should distribute the other half to appellees, and in case of failure to recover at all, then he should get nothing whatever for his efforts and services nor his outlays.

In consideration of this arrangement Barnum agreed in this instrument to perform all the duties imposed upon him by the power of attorney to the best of his ability, among which were the bringing and prosecution of suits for the recovery of the inheritance. It is urged that the cross-examination of Barnum as to this agreement was improper. He testified to the making of the power of attorney, and on cross-examination, was required to give the whole of the same transaction, and in this there was no error. When Barnum returned from Europe he showed the power of attorney and agreement to appellant, and appellant was informed of their contents and relation to each other.

Barnum employed a firm of attorneys at Ottawa, Illinois, who agreed to undertake and prosecute the litigation necessary to recover the estate for a fee of $1,000 in case of success, and nothing in case of failure. Appellant was also employed by Barnum as an attorney in the matter upon an agreement for a reasonable fee in case of success and nothing unless successful; and subsequently Barnum relinquished to appellant

all claim to any proceeds and it was agreed between them that appellant should have the one-half to which Barnum would be entitled.

There was a proceeding in the Probate Court and a bill in equity was filed, whereupon Funk sent his attorney to Germany and settled with appellees for a consideration of about $10,000, and an agreement to protect them against any claim by Barnum. The Ottawa firm knew nothing of the contract by which Barnum was to have one-half the estate for legal services rendered and procured, and they were the only attorneys appearing in court or of record in the matter. Funk settled their claim by paying them $600. Appellant testified that he did a great amount of work in the matter; that he drafted a bill which was subsequently modified and filed; that he searched the recorder's office and Probate Court and made copies and translated German receipts; that he studied the laws of the German Empire in force in Rhenish Prussia, calling to his aid a Doctor of Laws of the University of Vienna; that he carefully examined the laws of the German Empire in the Law Institute in Chicago, but found them so badly indexed that he resorted to the French translation of the Frederician code, where he found that half-sisters and half-brothers inherited just as in Illinois; that he found the laws over there very seldom changed, and examined the law in regard to parish records and found that law still more ancient than the law of inheritance and apparently unchanged; that he studied our alien land law and in the investigation got a copy of the last treaty between the German Empire and the United States and concluding that the treaty made the constitutionality of the statute a serious question, took further steps for the security of the appellees; that he studied the law of mandamus and of *ne exeat* and looked up hundreds of cases in the English and American reports; that he spent one month drawing interrogatories to take depositions, and that he investigated many questions of fact as well as law and thereby thoroughly prepared himself for the anticipated contest, which did not take place only because of the settlement. Doubtless appellant acted with much zeal, and with anxious care and forethought

Evans v. Mohr.

performed services in the litigation which was ended by the settlement. His right to recover compensation for such services from appellees must, however, rest upon some contract, express or implied, or created by law, which would render appellees liable to him. There was an express contract, covering the subject. The power of attorney and the contract were executed between the same parties, at the same time, relating to the same subject-matter, and must be considered together in determining what the entire agreement between the parties was. The contract referred to the power of attorney, and supplemented it by providing for the repayment of cash outlays, and for the amount to be paid and manner of payment for services of the attorney in fact both legal and otherwise, and for all legal services procured by him to be rendered. It is clear that the cash outlays to be first deducted from the receipts did not include legal services rendered, or procured by the attorney in fact, for they are distinctly and separately provided for. The attorney in fact contracted with the heirs that all legal services he procured to be rendered should be paid for by him out of his half of the estate. He agreed to perform the duties assumed by the power of attorney, to bring and prosecute suits, and, so far as legal services were concerned, for one-half of the estate recovered. If appellant is subject to this contract and has no rights arising outside of it to compensation, then it is manifest that he could not recover in this case. The contract was with the attorney in fact, and he was the only one to whom appellees were bound. They were to pay him for legal services procured to be rendered, and could not be liable to different parties under this contract for the same services. Appellant saw both the power of attorney and contract before his employment. He knew what the whole agreement was, both from the papers and from his partner who employed him. Appellant testified that when he suggested various lawyers at Ottawa, his partner told him that he did not want to spend all of his half if he could help it and wanted to make a contract with the Ottawa firm for a contingent fee. Appellant was to have nothing except in case of success and subsequently was to have what-

ever profit there was in the contract. His employment was under the contract with notice of what it was, and there is, therefore, no question in the case of apparent authority to employ counsel at the expense of appellees without notice of the actual agreement. There was nothing that could give appellant any rights outside of the contract. There is no direct evidence that appellees knew that he was doing anything in the case, but if they did, they knew that the attorney in fact, his partner, was to pay for such services procured to be rendered and had a right to presume that they were being rendered in accordance with that agreement. Such knowledge, if it existed, would not raise an implied contract on the part of appellees to pay him. Price v. Hay et al., 132 Ill. 543. What has been said renders it unnecessary to pass upon the question of the alleged champertous nature of the contract, inasmuch as appellant has no rights under it as against appellees whatever its nature.

The judgment will be affirmed.

*Judgment affirmed.*